## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Raymond L. Bonieskie ) <br> 20735 Jersey Mill Pl ) <br> Ashburn, VA 20147 ) <br> ) <br>    Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> Alberto Gonzales ) <br> Attorney General ) <br> U.S. Department of Justice ) <br> 950 Pennsylvania Avenue, N.W. ) <br> Washington, D.C. 20530 ) <br> ) <br>    Defendant. ) | Civil Action No. 1:07-cv-00666 <br> Judge: Hon. Paul Friedman |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR DISMISSAL OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff Raymond L. Bonieskie, by counsel, respectfully submits this Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment. Attached to this Memorandum are Plaintiff's Response to Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute (Plaintiff's Exhibit A), and Plaintiff's Statement of Genuine Issues (Plaintiff's Exhibit B).

Defendant plainly has failed to carry the heavy burden necessary to prevail on either dismissal or summary judgment, and accordingly, Plaintiff requests that that the Court deny Defendant's Motion in its entirety.

# I. <u>INTRODUCTION</u>

The Complaint sets forth a prima facie case of disability-based discrimination, supported with well-founded allegations that Defendant violated the Rehabilitation Act of 1973, as amended, by failing to provide reasonable accommodation for Defendant's known disability. In seeking dismissal, or alternatively, summary judgment, particularly at this early stage in the proceedings, Defendant bears a heavy burden. <u>See  Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (summary judgment appropriate only after adequate time for discovery). In cases like the present one, involving claims of employment discrimination, the Supreme Court has set the bar even higher. <u>Id.</u> at 323.

Defendant clearly fails to meet his burden of proof in this case. There is no basis for dismissal of, or summary judgment on, the Complaint, as Plaintiff has established more than "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007), and a reasonable jury could find in his favor. Moreover, there plainly are material facts in dispute.

In sum, a proper application of the standards for dismissal and for summary judgment make clear that the Court should deny Defendant's Motion for Dismissal or Summary Judgment, and permit Plaintiff to proceed with his well-founded allegations of employment discrimination as defined under the Rehabilitation Act of 1973.

# II.     <u>STATEMENT OF FACTS</u>

Raymond L. Bonieskie ("Plaintiff" or "Deputy Marshal Bonieskie") is employed as a Deputy United States Marshal. He has served as a sworn law enforcement officer with the U.S. Marshals Service  for 16 years, and as a Deputy U.S. Marshal since August 4, 1998.  Complaint, ¶¶ 5,12. Beginning in May 1999, and at all times relevant to the Complaint, Deputy Marshal

Bonieskie suffered from chronic disabling back pain, and in a related development, came to suffer from a chemical dependency on prescription pain and sleep medication, beginning in 2004. These disabilities limited his ability to engage in certain major life activities, including working, thinking, sleeping, caring for himself and interacting with others. Complaint, ¶¶ 13-15, Plaintiff's Exhibit A, pp. 65-74.

Plaintiff's medical problems began in the 1990's, when he began suffering from disk herniation and lumbar spinal stenosis. He underwent a series of operations, but matters only worsened, and after his third and final surgery in May 1999, he was left with constant and intractable back pain. His physician prescribed narcotic pain medication, primarily Percocet. However, it did not effectively alleviate the pain, and Plaintiff was never completely pain-free after his surgery in May 1999.  Complaint, ¶¶ 18-19.

During the summer of 2004, Plaintiff began to have problems with the Percocet prescribed by his doctor. He began taking more than the prescribed amount in an attempt to control the constant pain. He also tried to control his supply of drugs to prevent overuse, by locking the medicine in his safe at night. Despite his taking more than the recommended dose, Plaintiff attained, at best, only partial release from the chronic pain. Complaint, ¶ 20.

By June 2004, Plaintiff had been taking Percocet in excess of the prescribed amount for some time. He began running out of pills before the renewal date, and would suffer through withdrawal while waiting for his new prescription to be filled. It was at this time that he began exhibiting pronounced symptoms at work, including memory lapses and blackouts. Complaint, ¶ 21.

Plaintiff also exhibited problems at home, for example, coming home from work, uncharacteristically avoiding all contact with his family, and taking his meals in bed. Id. He had

difficulty sleeping due to the pain, and his doctor prescribed Ambien, a sleep aid. Plaintiff began taking Ambien regularly, in addition to Percocet. Complaint, ¶ 22.

Sometime during the fall of 2004, Plaintiff attempted to go off the Percocet for the first time. He stopped taking the medication, and in late September 2004, he sought help from the Agency's Employee Assistance Program ("EAP"). Plaintiff informed the Agency's contract counselor for EAP, Mr. Tom Madden, that he was taking Ambien and Percocet at the same time. Mr. Madden did not warn Plaintiff of the highly addictive properties of Ambien, especially when mixed with Percocet, but did recommend a drug dependency recovery program for Plaintiff to attend. However, when Plaintiff contacted the recommended program, he spoke with a counselor who evinced much greater interest in securing payment, than in assisting him. Discouraged and upset, Plaintiff again contacted EAP counselor Tom Madden. Plaintiff told him that he was frustrated with the response he had received from the recommended service provider, and that he intended to try to stay off Percocet on his own. Mr. Madden failed to provide any guidance to Plaintiff regarding recovery from chemical drug dependency, and failed to inform Plaintiff that abstinence did not represent recovery. Mr. Madden did not recommend any other program or course of action for Plaintiff, and offered no further assistance. Complaint, ¶ 23.

Despite this setback, Plaintiff made a valiant effort to stay off of Percocet for five weeks. However, in November 2004, Plaintiff seriously re-injured his back in the course of his duties at work. In severe pain, Plaintiff went to his doctor, and the doctor prescribed Percocet once again. From this point on, Plaintiff's problems at work greatly worsened, as did his problems at home. Complaint, ¶¶ 24-25.

Plaintiff by this time was addicted to Ambien as well as Percocet. During the nights, Plaintiff would get up out of bed, while still sound asleep, and walk around the house. He would sometimes go to the kitchen in the middle of the night and cook entire meals, and then leave the stove on. He would confront his wife and children and scream at them, but in the morning have no memory whatsoever of these events. Complaint, ¶ 26.

Plaintiff soon realized he was facing the same addiction issues as before. On Sunday, February 6, 2005, he decided to stop taking the Percocet completely. Plaintiff then flushed the remaining supply of his Percocet down the toilet. However, Plaintiff did not stop taking the Ambien. The next morning, Monday February 7, 2005, he began suffering from withdrawal symptoms. The increased pain made sleep difficult and by Tuesday, February 8, 2005, Plaintiff was not sleeping and called his doctor for another Ambien prescription. Complaint, ¶ 27.

On the evening of Tuesday, February 8, 2005, Plaintiff took an Ambien and went to bed around 7:00 or 8:00 p.m. Later, Plaintiff's wife would report that in the middle of the night, Plaintiff again took the Ambien. Plaintiff has no memory of taking any Ambien later that night.

On the morning of Wednesday February 9, 2005, Plaintiff's wife argued with Plaintiff regarding his bizarre and disturbing behavior. She told Plaintiff he had to move out of the house until he had recovered. Plaintiff packed up his things and left for a hotel. He checked into the hotel, took an Ambien and went to bed. Id.

Plaintiff awoke a few hours later in a state of half-sleep, due to the effects of the Ambien. In this semi-conscious state, Plaintiff apparently put on two coats and then got into his vehicle with the intent of driving home and getting more equipment. Plaintiff drove 75 or 100 feet, and hit the back of an unoccupied pickup truck in the parking lot of the hotel. Complaint, ¶ 30.

The Agency formally opened its investigation of the accident on April 29, 2005. The investigation was completed, and the results sent to Defendant's management team on September 9, 2005. Complaint, ¶ 31.

On January 30, 2006, the Agency issued a proposed removal for Plaintiff. On February 24, 2006, Plaintiff submitted a written response to the proposal, including a request for accommodation. Nonetheless, the Agency decided to demote Plaintiff from his position as a Deputy U.S. Marshal GS-1811-12/3 to a GS-0082-11/5, effective April 2, 2006, and suspended Plaintiff from May 1, 2006 through May 30, 2006. Complaint, ¶¶ 33-37.

On April 21, 2006, Plaintiff appealed his demotion with the United States Merit Systems Protection Board ("MSPB"). An MSPB administrative judge issued an Initial Decision, finding in pertinent part that the Agency had not discriminated against Plaintiff as alleged. Plaintiff then sought review of the MSPB's findings of no discrimination from the United States Equal Employment Opportunity Commission (EEOC). The EEOC issued a decision concurring in the findings on March 12, 2007.

On April 11, 2007, Plaintiff filed suit in this Court, alleging that the Agency violated his rights under the Rehabilitation Act of 1973, as amended, when it failed to provide reasonable accommodation for his known disability (chronic disabling back pain and dependency on prescription medication).

The Agency responded to the Complaint by filing a Motion to Dismiss, or in the Alternative for Summary Judgment. For the reasons discussed in detail below, this Court should deny the Agency's Motion in its entirety, and permit Deputy Bonieskie to pursue the employment discrimination claims set forth in his Complaint.

### III. ARGUMENT

The Complaint presents well-founded allegations that Defendant violated the Rehabilitation Act of 1973, as amended, when it failed to provide reasonable accommodation to Plaintiff Raymond Bonieskie, a disabled employee whose disability and need for accommodation were known to Defendant. Plaintiff has set forth a prima facie case of disability-based discrimination, by demonstrating that he is an otherwise qualified disabled employee of the U.S. Marshals Service; that he requested reasonable accommodation from the U.S. Marshals Service; and that the U.S. Marshals Service refused to provide any accommodation.

In seeking dismissal, or in the alternative, summary judgment on the Complaint, Defendant erroneously argues that Plaintiff has failed to state a claim for failure to accommodate under the Rehabilitation Act because (1) "based on the allegations of Plaintiff's complaint, it is apparent that he was not disabled within the meaning of the Rehabilitation Act," and (2) "the irrefutable evidence demonstrates that none of his supervisors were even aware of his alleged disability and that he never even requested reasonable accommodation." Defendant's Memorandum, pp. 6-7.

As demonstrated in this Memorandum, Defendant fails to meet the heavy burden necessary to prevail on its Motion, and Plaintiff, therefore, respectfully requests that this Court deny Defendant's Motion in its entirety, and permit him to proceed with this action.

### A.    THE GOVERNMENT FAILS TO CARRY THE HEAVY BURDEN NECESSARY TO PREVAIL ON ITS MOTION FOR DISMISSAL

The government bears a weighty burden in seeking to have this Court dismiss the Complaint, and clearly fails to carry it. The Supreme Court has defined the applicable standard of review as follows:

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief . . . The complaint must be 'liberally

construed in favor of the plaintiff,' who must be granted the benefit of all
inferences that can be derived from the facts alleged.

See Conley v. Gibson, 355 U.S. 41, at 45-46 (1957), as cited in Schuler v. U.S., 617 F.2d 605, at

608 (D.C. Cir. 1979).  See also Bell Atlantic Corp. v. Twombly, 550 U.S. ___ (2007), at _____

(slip op., at 24). (" [w]e do not require heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face.")

Defendant appears to claim that the Supreme Court has somehow raised the long-

established standard for dismissal, citing the Twombly decision, above. However, as

demonstrated above, the Twombly decision clearly did not do so. Moreover, the Supreme Court

subsequently reaffirmed its long-established standard for dismissal in Erickson v. Pardus, 551

U.S. ___ (2007). There, the Court vacated the judgment of the Court of Appeals because "[t]he

case cannot...be dismissed on the ground that petitioner's allegations...were too conclusory to

put these matters in issue." Id. at ___ (slip op., at 6).

The Supreme Court explicitly held in Erikson v. Pardus that, "[s]pecific facts are not

necessary; the standard need only "'give the defendant fair notice of what the...claim is and the

grounds upon which it rests.'" Id. at ___ (slip op., at 5).  The Court stated further that, "when

ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual

allegations contained in the complaint." Id. at ___ (slip op., at 5).

Defendant cannot make the necessary showing to secure dismissal of the Complaint.

Deputy Bonieskie has presented in the Complaint well-founded allegations that he was an

individual with a disability within the meaning of the Rehabilitation Act, and that his employer

had notice of his disability.  Defendant's arguments to the contrary are without merit.

### B.    THE GOVERNMENT ALSO FAILS TO CARRY THE HEAVY
###        BURDEN NECESSARY TO OBTAIN SUMMARY JUDGMENT

In addition to moving for dismissal of Deputy Bonieskie's Complaint, Defendant seeks

in the alternative to have this Court grant summary judgment in its favor. Again, Defendant bears

a heavy burden, and specifically must establish, pursuant to FRCP 56 (c), "the absence of a

genuine dispute of material fact." See Edwards v. EPA, 2006 WL 2965507 (D.D.C. October 18,

2006), citing Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Concisely stated, a defendant

is not entitled to summary judgment when "some factual issues remain[ed] unresolved." South

Florida Water Management District v. Miccosukee Tribe, 541 U.S. 95, 111 (2004). Moreover,

"the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249(1986). As discussed below, Deputy Bonieskie pled in his Complaint, and is

prepared to prove at trial, facts establishing that he was disabled as defined under the

Rehabilitation Act of 1973, and that Defendant, his employer, had notice of his disability.

Defendant, therefore, is not entitled to summary judgment.

### C.    PLAINTIFF RAYMOND BONIESKIE WAS DISABLED

In seeking dismissal or summary judgment, Defendant first attempts to argue that

Plaintiff failed to establish that he is "disabled" as defined under the Rehabilitation Act, because

he purportedly "failed to allege in his complaint that his alleged impairments affected any of his

major life activities." Defendant's Memorandum of Points & Authorities, p. 8. This is plainly

incorrect. Plaintiff states in his Complaint that he has suffered from drug dependency

(prescription medication) and chronic disabling back pain, and that these conditions have

"limited his ability to engage in certain major life activities, and resulted in his requiring

reasonable accommodation for his disability." Complaint, ¶¶ 13-14. Moreover, the Complaint

and Plaintiff's MSPB deposition testimony detail the substantial limitations his disability has placed on his ability to perform the major life activities of working, thinking, sleeping, caring for himself, and interacting with others. Plaintiff's Exhibit A, pp.65-74.

A person is "disabled" as defined under the Rehabilitation Act of 1973 when he or she has "a physical or mental impairment that substantially limits one or more of the major activities of such individual." See 29 C.F.R. § 1630.2(g)(1); Bragdon v. Abbott, 118 S.Ct. 2196, 2202 (1998).[1]  Major life activities, in turn, are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i).

The term "major life activity" is very broad, and includes activities that are private in character. Bragdon v. Abbott, 524 U.S. 624, 118 S. Ct. 2196, 2205 (1998) (rejecting attempt to confine major life activities to "those with a public, economic, or daily aspect"). A major life activity is "a basic activity that the average person in the general population can perform with little or no difficulty." Pack v. Kmart Corp., 166 F.3d 1300, 1305 (10th Cir. 1999).

The applicable regulations provide that substantially limits means "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2 (j).

---

[1]  Following enactment of the Americans with Disabilities Act (ADA), Congress amended the Rehabilitation Act to provide that the ADA's enforcement standards would govern employment discrimination claims against the government. 42 USC § 794(d).

### 1. **Plaintiff Was Substantially Limited in Several Major Life Activities**

As stated in the Complaint, Plaintiff's disability substantially limited his performance of certain major life activities. Complaint, ¶ 15. These include activities recognized by the federal courts as meeting the definition of "major life activities" under the Rehabilitation Act.

Specifically, Plaintiff experienced substantial limitations in the major life activities of sleeping, thinking, and caring for his personal hygiene. Complaint, ¶ ¶ 21, 26-27; Plaintiff's Exhibit A, pp. 66, 72-73. See <u>EEOC v. Sara Lee Corp.</u>, 237 F.3d 349, 352-53 (4th Cir. 2001) (sleeping, thinking, and caring for oneself are major life activities); <u>Pack v. Kmart Corp.</u>, 166 F.3d 1300, 1305 (10th Cir. 1999) (sleeping); <u>Humphrey v. Memorial Hospital Ass'n</u>, 239 F.3d 1128, 1134 (9th Cir. 2001) (bathing and dressing).

Plaintiff also reported painful difficulties in his relations with his wife and children. This, too, is significant, as interacting with others is recognized as a major life activity. Complaint, ¶ ¶ 21, 26. <u>See, e.g.</u> <u>McAlindin v. County of San Diego</u>, 192 F.3d 1226, 1234 (9th Cir. 1999) ("interacting with others is an essential, regular function, like walking and breathing").

### 2. **Plaintiff Also Was Substantially Limited in the Major Life Activity of Working**

In <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471 (1999), the Supreme Court assumed without deciding that working is a major life activity. The term "substantially limits," with respect to the major life activity of working, means:

> . . . significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2 (j) (3) (i).

As stated in his Complaint, Plaintiff experienced "memory loss" and "blackouts" at work as a result of his disability. Complaint, ¶ 21. These symptoms clearly represent a substantial limitation in his work as a sworn law enforcement officer required to carry a firearm. Memory loss and blackouts also would substantially limit Plaintiff's ability to perform a wide range of other jobs. Thus, Plaintiff was substantially limited in the major life activity of working. See Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 764 (3rd Cir. 2004) (police officer whose depression rendered him unable to carry a firearm deemed substantially limited in his ability to work).

### D. AGENCY MANAGEMENT OFFICIALS WERE AWARE OF PLAINTIFF'S DISABILITY AND NEED FOR REASONABLE ACCOMMODATION

Defendant also argues that he is entitled to dismissal or summary judgment on the Complaint, based on the claim that "Plaintiff cannot show that any U.S. Marshal personnel were aware of his alleged disability," Defendant's Memorandum of Points & Authorities, at 10, and that Plaintiff "never requested any reasonable accommodation." Id. at 11.

As stated in the Complaint, Agency management officials were aware of Plaintiff's problems at work, and discussed them among themselves. Complaint, ¶ 38. This evidently occurred several months before the incidents that led to his demotion. A memorandum that Plaintiff recalls receiving from his then supervisor, Thomas Hedgepeth, on or about the time of his February 2006 accident, confirmed that management officials had been concerned about Plaintiff's erratic behavior at work for several months.

Deputy Bonieskie intends to seek discovery relating to these matters in the present case, and clearly should be permitted to do so. This is precisely the reason for the well-established principle that summary judgment is only appropriate after there has been adequate time for

discovery. See <u>Celotex Corp. v. Catrett</u>, 417 U.S. 317, 322 (1986); <u>Jones v. Potter</u>, 2004 WL 123415 (D.D.C. 2004) (slip op. at 4-5).

Additionally, Plaintiff sought assistance for his drug dependency through the Agency's Employee Assistance program ("EAP") as far back as February 2004. While such communications generally are deemed confidential, there is an explicit exception for situations where an employee poses a "danger to himself/herself, or to others . . . ." See <u>U.S. Department of Justice Employee Assistance Program (EAP)</u>, p. 3, publicly available at <u>www.usdoj.gov/jmd/ps/eapbrochure.htm</u> (attached as Plaintiff's Exhibit C). Clearly, a sworn law enforcement officer, carrying a firearm in the course of his duties, poses a significant threat to himself and others when, like Deputy Bonieskie, he is suffering from a chemical drug dependency, and is experiencing memory lapses and blackouts at work. Thus, a reasonable person readily could conclude that EAP personnel promptly forwarded the information about Deputy Bonieskie to Agency management officials. Again, Plaintiff is entitled to seek discovery in order to garner evidence on this point.

Defendant erroneously claims in support of his argument that Deputy Bonieskie "repeatedly testified that his supervisors were unaware of his alleged disability." <u>Defendant's Memo,</u> at 12. This is incorrect. Deputy Bonieskie testified only that *he* did not tell them (that is, until after the accident that led to his demotion). See Plaintiff's Exhibit A, pp. 65-66, 73-76, 90, 99, 173. As discussed above, Plaintiff has reason to believe that his supervisors were in fact aware of his disability.

Moreover, Defendant reveals a lack of knowledge of the reasonable accommodation requirements of the Rehabilitation Act when he dramatically announces that Plaintiff's admission that he did not request reasonable accommodation "sounds the death knell for his

claimed denial of a reasonable accommodation." Defendant's Memo, at 11. While the

Rehabilitation Act does not require "clairvoyance" of employers, Hedberg v. Indiana Bell Tel.

Co., 47 F3d 928, 934 (7th Cir. 1995), a disabled employee's failure to explicitly request

reasonable accommodation does not absolve an employer of the legal obligation to provide

reasonable accommodation. Smith v. Midland Brake, Inc., 180 F.3d 1154, 1171, fn. 9 (10th Cir.

1999) (en banc).

As Defendant himself concedes, an employer is responsible for providing reasonable

accommodation when it is "aware" of an employee's disability. See Scarborough v. Natsios, 190

F. Supp. 2d 5, 19 (D.D.C. 2002). See also EEOC Enforcement Guidance: Reasonable

Accommodation, at 51-52. As stated by Plaintiff in his Complaint, Agency management officials

were in fact aware of his disability and his need for accommodation. Complaint, ¶ 38.

### E. **PLAINTIFF EXPLICITLY REQUESTED REASONABLE ACCOMMODATION**

Contrary to Defendant's assertions, Plaintiff did explicitly request reasonable

accommodation. On February 24, 2006, Plaintiff submitted a written response to the Agency's

proposal to remove him from service, including a request for accommodation. Defendant

attempts to discount this request, given that it was made after the accident that led to the

Agency's proposal to terminate him. Defendant's Memorandum, p. 12. However, when

disciplinary action is based on conduct related to a disability, as in this case, the issue is now

whether the agency knew of the disability when the alleged misconduct occurred, but whether it

was aware of the disability when it imposed discipline. See Brooks v. U.S. Postal Service,

EEOC Decision No. 01861322, 1763/C10 (1987).

# IV. CONCLUSION

In sum, Plaintiff has pled in his Complaint sufficient facts to state a "plausible claim to relief," Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007), and there clearly are genuine issues in dispute. Accordingly, the Court should deny Defendant's Motion to Dismiss, Or in the Alternative, For Summary Judgment, in its entirety.

Respectfully Submitted,


/s/_____

Cheryl Polydor, Esq.
DC Bar Id #: 454066
John Berry, PLLC
1990 M Street, NW
Suite 610
Washington, DC 20036
Phone: (202) 955-1100
Fax: (202) 955-1101
Attorney for Plaintiff Raymond L. Bonieskie


Dated: August  20, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Raymond L. Bonieskie<br>20735 Jersey Mill Pl<br>Ashburn, VA 20147<br><br>   Plaintiff,<br><br> v.<br><br>Alberto Gonzales<br>Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:07-cv-00666<br>   Judge: Hon. Paul Friedman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rules 7(h) and 56.1, Plaintiff Raymond L. Bonieskie ("Plaintiff")

submits the following responses to Defendant's Statement of Material Facts as to Which There is

No Genuine Issue.

Specific responses and objections are presented below in numbered paragraphs tracking

the numbering scheme in Defendant's Statement of Facts.

1.  Admit.

2.  Deny.

3.  Admit.

4.  Admit.

5.  Admit that Plaintiff did not inform Agency officials or employees that he was

unable to complete the physical requirements of the job and in fact, was able to perform his job

duties on a regular basis. However, Plaintiff was able to perform his job duties because he was

1

PLAINTIFF'S EXHIBIT

tabbies

4

working on background investigations, which involved only a limited physical requirement. Deposition of Raymond Bonieskie dated June 21, 2006 ("Plaintiff Dep.") (Defendant's Exhibit A, p. 54).

6. Admit.

7. Admit.

8. Admit.

9. Plaintiff does not dispute that he was formerly employed as an Employee Relations Assistant with the Agency. Denies that he was aware that his contact with the EAP was confidential and that no one in the Agency would know that he contacted the EAP.

10. Deny.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Deny.

Respectfully submitted,

_____/s/_____.

Cheryl Polydor
D.C. Bar #454066
LAW FIRM OF JOHN BERRY P.L.L.C.
1990 M St., NW, Suite 610
Washington, D.C. 20036
(202) 955-1100

Counsel for Plaintiff

August 20, 2007

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Raymond L. Bonieskie              )
20735 Jersey Mill Pl               )
Ashburn, VA 20147            )
                                  )
        Plaintiff,           )
                                  )
      v.                     )     Civil Action No. 1:07-cv-00666
                                  )     Judge: Hon. Paul Friedman
Alberto Gonzales              )
Attorney General             )
U.S. Department of Justice     )
950 Pennsylvania Avenue, N.W.  )
Washington, D.C. 20530      )
                                    )
        Defendant.         )

## PLAINTIFF'S STATEMENT OF GENUINE ISSUES

Pursuant to Local Civil Rules 7(h) and 56.1, Plaintiff Raymond L. Bonieskie ("Plaintiff") respectfully submits the following Statement of Genuine Issues, in response to Defendant's Statement of Material Facts as to Which There is No Genuine Issue.

1.    Plaintiff is or was disabled.

2.    Plaintiff is or was substantially limited in several major life activities, including working.

3.    Defendant was aware of Plaintiff's disability of chronic back pain.

4.    Defendant was aware of Plaintiff's disability of drug dependency.

5.    Defendant was aware of Plaintiff's need for reasonable accommodation.

6.    Defendant requested reasonable accommodation from Defendant.



Respectfully submitted,

_____/s/_____
Cheryl Polydor
D.C. Bar #454066
LAW FIRM OF JOHN BERRY P.L.L.C.
1990 M St., NW, Suite 610
Washington, D.C. 20036
(202) 955-1100

Counsel for Plaintiff

August 20, 2007

⌐ **Resources**

# U.S. Department of Justice
## Employee Assistance Program (EAP)

---

Which EAP Office Do I Use?

EAP Site Index | Need Help? | About EAP | Contact JMD EAP | Confidentiality | Services | FAQs
News & Upcoming Events | Coping with Tragedy | Military Family Support | Security Tips | DOJ Worklife |
Overseas Assignment Information and Support for Department Employees |
Manager's Corner

## Helpful Links

Addiction Information| Adoption Resources | Aging Resources | Anger Management | Care Giving |
Child Care and Parenting | Conflict Resolution | Consumer Protection and Consumer Education Information | Dieting and Nutrition |
Disabilities |
Domestic Violence | Education | End of Life Information | Financial | Government Benefits |
Grief and Support Services | Health and Medical | Health Insurance | Housing Assistance | Law Enforcement and Mental Health | Legal |
Manager's Corner |
Marital/Partner in Conflict | Medications | Mental Health | Military Family Support |
Overseas Assignment Information and Support for Department Employees |
Pet Resources | Recreational Information | Relocation Information | Smoking Cessation | Stress Management |
Sexual Assault Resources | Training for Federal Employees | Workplace Violence

---

### Federal Employee Assistance Programs (EAP) Summit

---

**The information on this Web site is presented for educational purposes only.  It is not a substitute for informed medical advice or training.  Do not use this information to diagnose or treat a mental health problem without consulting a qualified health or mental health care provider.**

**All information contained on these pages is in the public domain unless explicit notice is given to the contrary, and may be copied and distributed without restriction.**

---

**News & Upcoming Events**
Adult Caregiver Support Group
Career Counseling
Communicable Disease Information
New Worklife Resource and Referral Services

---

**Recent articles:**

Post Incident Shooting and Reactions

Managing Stress, Terrorism and the Unknown
Coping with Violence



PLAINTIFF'S EXHIBIT
tabbies

---

### Need Help?

At certain points in our lives we can be overcome by life situations such as the death of a loved one, depression, serious illness, financial problems or marital and family related difficulties. Usually we can handle things on our own. However, sometimes these problems reach a level which could impair work, home-life or our general sense of well-being. When you are not sure where all the pieces of the puzzle go, or it seems like the problem or pain will never subside, the EAP counselors can assist you by helping you plan for a healthier and more productive life.

The Employee Assistance Program has experienced counselors that provide professional & confidential short-term counseling, information, support groups, management consultations, referrals and many more services to DOJ employees and their families.

Instead of letting challenges accumulate into crises, let us help you develop the skills to minimize or even prevent problems.

Contact Your EAP  -  DOJ has several EAPs that service a variety of DOJ components such as INS, EOUSA, FBI, US Marshals, and more. Make sure you call the correct EAP to ensure quick and proper assistance.

Return to the TOP

### EAP Purpose and Mission

The Department of Justice, Justice Management Division (JMD) is dedicated to offering the highest quality Employee Assistance Program (EAP) services to its employees. The Mission of the EAP and its underlying principles are as follows.

1. Every employee who seeks EAP assistance will be treated with the utmost respect, dignity and consideration for their concerns, feelings and situation.

2. The goal of the EAP is to provide a quick response to all requests for services both for counseling and Information and Referral.

3. EAP counselors understand that employees may have problems at any time, thus the EAP provides for emergency after hour contact.

4. The JMD EAP acknowledges that all persons experience problems at one time or another in their lives. The act of seeking assistance to resolve personal problems is understood to be an act of strength, responsibility, purpose, and taking control of one's life.

5. Communication between the EAP and an employee is confidential and this understanding is the backbone of the EAP.

6. Employees are encouraged to seek assistance on their own initiative before problems affect their work. Early resolution of personal problems is in the best interest of the individual and the Department.

7. Participation in the EAP will not in and of itself, jeopardize an employee's job security or promotional opportunities.

8. While it shall always be the employee's choice to accept or decline the services of the EAP, it is the employee's responsibility to assess and maintain optimum physical and mental health.

9. The EAP staff will not get involved when a family member calls and complains about an employee - this would be considered an intrusion into the employee's private life. However, if a family member calls, the EAP will offer assistance to that family member when appropriate.

10. It is the responsibility of supervisors at all levels to offer a troubled employee assistance through the EAP in hopes this will correct performance, conduct or attendance problems, thus avoiding possible disciplinary action.

Return to the TOP

## Confidentiality

Contact between an EAP counselor and a DOJ employee is considered confidential. Information regarding an employee's use of the EAP may not be shared with any other party unless the employee provides written permission. The EAP is compelled to keep client information private as required by Federal law and regulation, and prevailing State and local laws.

Confidentiality is excepted in those instances when the employee/client has been determined to be a danger to himself/herself, or to others, and in instances where child or elder, abuse is suspected, as may be required by State reporting requirements and/or Federal law.

All records are kept in the EAP Mosler® safe system and only EAP counselors have access to such. After three years of the date of last contact with a client, client records are shredded entirely. No written materials may be released to a third party without the client's written consent.

Using the Depression and/or Alcohol Screening phone or on-line services is completely confidential. No identifying information is required and the screening can in no way identify you to anyone.