UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
RAYMOND BONIESKIE,                       )
                                        )
            Plaintiff,                   )
                                        )
      v.                                 )          Civil Action No. 07-0666 (PLF)
                                        )
MICHAEL B. MUKASEY, Attorney General,    )
United States Department of Justice,[1]  )
                                        )
            Defendant.                   )
_____)

OPINION

      This matter is before the Court on defendant's motion to dismiss the complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2]  Plaintiff

Raymond L. Bonieskie claims that defendant violated the Rehabilitation Act of 1973, 29 U.S.C.

§§ 701 *et seq.*,  by failing to provide reasonable accommodations for his disabilities.  Upon

consideration of defendant's motion, plaintiff's opposition, defendant's reply, and the entire

record in this case, the Court grants summary judgment in defendant's favor.

_____

    [1]    The original complaint named Alberto Gonzales, former Attorney General of the
United States, as the party defendant.  The Court substitutes his successor, Michael Mukasey,
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

    [2]    The papers submitted in connection with this matter include: Defendant's Motion
to Dismiss, Or in the Alternative, For Summary Judgment ("Def.'s Mot."); Plaintiff's
Memorandum of Points and Authorities in Opposition to Defendant's Motion for Dismissal Or,
in the Alternative, For Summary Judgment ("Pl.'s Opp."); and Defendant's Reply in Further
Support of His Motion to Dismiss, Or in the Alternative, For Summary Judgment ("Def.'s
Reply").

I.  BACKGROUND

Plaintiff Raymond Bonieskie has been employed with the United States Marshals Service, an agency within the United States Department of Justice, since August 20, 1990.  See Plaintiff's Complaint ¶ 12 ("Compl.").  He has been a Deputy United States Marshal since August 4, 1998.  See id.  Some time in the mid-1990s, Mr. Bonieskie began suffering from a herniated disc and lumbar spinal stenosis, both of which caused nerve pain and discomfort in his back.  See id. ¶ 18.  Mr. Bonieskie had several surgeries to treat those conditions in the late 1990s, after which he was placed on light duty.  See id.; see also Def.'s Reply, Ex. 1, Deposition of Raymond Bonieskie at 20-21 (June 21, 2006) ("Bonieskie Deposition").[3]  According to Mr. Bonieskie, he was never completely "pain-free" after 1999.  See Compl. ¶ 19.  At some point, Mr. Bonieskie began taking Percocet, a prescription medication, to control his pain.  During the summer of 2004, Mr. Bonieskie began taking more than the prescribed amount of Percocet, see Compl. ¶ 20, and eventually became addicted to the drug.  See id. ¶¶ 21-23.  During this same time, Mr. Bonieskie was prescribed Ambien, a sleep aid, which he began taking regularly in addition to Percocet.  See id. ¶ 22.  Mr. Bonieskie eventually became addicted to Ambien as well. See id. ¶ 26.

_____

[3]      Defendant attached an excerpt of a deposition of Mr. Bonieskie – apparently taken during the course of Mr. Bonieskie's administrative appeal to the Merit Systems Protection Board, see infra at 4 – to its initial motion to dismiss or, in the alternative, for summary judgment.  See Def.'s Mot., Ex. 1.  In his opposition to that motion, Mr. Bonieskie refers to this deposition, but not to the portions of the deposition attached to defendant's motion.  Defendant subsequently attached to its reply the portions of the deposition to which Mr. Bonieskie referred in his opposition.  See Def.'s Reply, Ex. 1.  For the sake of clarity, the Court will refer to both excerpts collectively as the "Bonieskie Deposition."

According to Mr. Bonieskie, his drug dependency caused him to do strange things while in a sleeping state – including walking around the house, making meals, and yelling at his family – of which he would have no memory in the morning.  <u>See</u> Compl. ¶ 26.  Mr. Bonieskie claims that other effects of his drug dependency included irritability, difficulty in relationships, performance problems at work, and an altered bathing regimen.  See Bonieskie Dep. at 65-66 (yelling at his wife and children); <u>id</u>. at 72 (showering only once or twice a week); <u>id</u>. at 73 (work problems).  According to Mr. Bonieskie, he never informed a supervisor or any agency official that he was unable to perform his job as a result of his physical limitations or his drug dependency issues.  <u>See id</u>. at 53-55.  He did, however, contact the Marshals Service Employee Assistance Program ("EAP") to seek counseling in September 2004.  <u>See</u> Compl. ¶ 23.  At that time, Mr. Bonieskie spoke with a contract counselor, who recommended that plaintiff participate in a drug treatment program.  <u>See id</u>.  Mr. Bonieskie contacted the recommended drug treatment program and spoke with a counselor affiliated with that program, but ultimately decided not to participate.  <u>See id</u>.

On February 9, 2005, plaintiff called in sick to work.  <u>See</u> Bonieskie Dep. at 128. At some point that day, plaintiff's wife told him he needed to leave the house until he recovered from his dependencies.  <u>See</u> Compl. ¶ 29.  Plaintiff packed up his belongings and checked into a hotel, where he took an Ambien and went to sleep.  <u>See id</u>.  Plaintiff awoke a few hours later and – still half-asleep – got into his government-owned vehicle with the intent of driving home to get some work-related equipment.  <u>See id</u>. ¶ 30.  Plaintiff drove 75 to 100 feet in the parking lot before crashing into the back of a parked vehicle.  <u>See id</u>.

The Marshals Service investigated the incident and, on January 30, 2006, proposed to remove plaintiff from federal employment. See Compl. ¶ 33; see also Def.'s Mot., Ex. C, Memorandum Regarding Proposed Removal at 1 (Jan. 30, 2006) ("Removal Mem.").[4] Mr. Bonieskie submitted a written response to the proposed removal through counsel. See Def.'s Mot., Ex. D., Written Response to Proposal to Remove Deputy U.S. Marshal Raymond Bonieskie (Feb. 24, 2006) ("Response Mem."). Among other things, the Response Memorandum asked the agency to impose a lesser sanction "because [Mr. Bonieskie] was suffering from the effects of a disability based on a drug dependency [at the time of the accident] which he has now overcome through structured treatment." Response Mem. at 7; see also id. at 15 (arguing that "a lesser sanction would be adequate").

On March 28, 2006, the Marshals Service decided to mitigate the proposed sanction. Instead of terminating Mr. Bonieskie, the agency suspended him for 30 days and demoted him from his former position of Deputy United States Marshal, GS-1811-12 step 3, to his current position of Deputy United States Marshal, GS-0082-11. See Def.'s Mot, Ex. E., Decision on Proposed Removal at 1 (Mar. 28, 2006). In June 2006, plaintiff appealed his demotion to the Merit Systems Protection Board ("MSPB"). This appeal was dismissed, as was Mr. Bonieskie's formal Equal Employment Opportunity Commission ("EEOC") appeal of the MSPB decision. See Compl. ¶¶ 41, 43. Mr. Bonieskie now seeks relief in this Court, claiming that his demotion constitutes a denial of a reasonable accommodation for his purported disabilities – that is, his "drug dependency and chronic debilitating pain." Id. ¶ 32.

---

[4]   The Marshals Service proposed to remove Mr. Bonieskie from federal employment for (1) driving a government-owned vehicle while impaired and (2) damaging government-owned property and the property of others. See Removal Mem. at 3-4.

## II.  PROCEDURE AND STANDARD OF REVIEW

### *A.  Procedure*

Defendant has moved to dismiss plaintiff's claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56 of

the Federal Rules of Civil Procedure.  Defendant's arguments refer to and rely upon materials

outside the pleadings, as do plaintiff's arguments in opposition.  When, on a Rule 12(b)(6)

motion, "matters outside the pleadings are presented to and not excluded by the court, the motion

must be treated as one for summary judgment under Rule 56.  All parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P.

12(d); see also Colbert v. Potter, 471 F.3d 158, 168 (D.C. Cir. 2006); Yates v. Dist. of Columbia,

324 F.3d 724, 725 (D.C. Cir. 2003).  Because both parties have had a reasonable opportunity to

present all pertinent materials and the Court has considered those materials, the Court will treat

defendant's motion as one for summary judgment pursuant to Rule 56(c) of the Federal Rules of

Civil Procedure.

### *B.  Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits [or declarations] show that there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or

unnecessary' do not affect the summary judgment determination." Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895. When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc ); Washington Post Co. v. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. See FED. R. CIV. P. 56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support his claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). While on summary judgment the Court must accept as true

6

the non-movant's factual assertions and all reasonable inferences therefrom, a non-moving party

is obligated to produce affirmative evidence supporting the challenged aspects of his claims by

affidavit or other competent evidence setting forth "specific facts" sufficient to allow a

reasonable jury to find in the non-movant's favor.  See FED. R. CIV. P. 56(e)(2).

Summary judgment for a defendant is most likely when a plaintiff's claim is

supported solely by the plaintiff's own self-serving, conclusory statements.  See Fields v. Office

of Johnson, 520 F. Supp. 2d 101, 105 (D.D.C. 2007) (noting that "[s]elf-serving testimony does

not create genuine issues of material fact" for purposes of summary judgment); Lindsey v. Rice,

524 F. Supp. 2d 55, 60 (D.D.C. 2007) (granting summary judgment where plaintiff's

"self-serving statements [were] too conclusory to survive [defendant's] summary judgment

motion"); Mulhern v. Gates, 525 F. Supp. 2d 174, 186 (D.D.C. 2007).  "[C]onclusory

allegations" and "unsubstantiated speculation" do not create genuine issues of material fact.

Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001); see also Harding v. Gray,

9 F.3d 150, 154 (D.C. Cir. 1993) ("[A] mere unsubstantiated allegation . . . creates no 'genuine

issue of fact' and will not withstand summary judgment.").

III.  THE REHABILITATION ACT

A.  Overview

The exclusive remedy for federal employees alleging that federal agencies

engaged in disability discrimination is Section 501 of the Rehabilitation Act, codified at 29

U.S.C. § 791.  See Taylor v. Small, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (holding that Section

504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, "does not provide federal employees

an alternative route for relief under the Rehabilitation Act") (internal quotation marks and citation omitted).

Section 501(b) requires federal employers to take "affirmative action" when making "hiring, placement, and advancement" decisions regarding "individuals with disabilities." 29 U.S.C. § 791(b). Among other things, this provision requires federal agencies to reasonably accommodate the disabilities of otherwise qualified employees unless doing so would cause an undue hardship. See Woodruff v. Peters, 482 F.3d 521, 526 (D.C. Cir. 2007); Taylor v. Rice, 451 F.3d 898, 904-05 (D.C. Cir. 2006); Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993). Section 501(g), codified at 29 U.S.C. § 791(g), explicitly instructs courts to apply the standards of the Americans with Disabilities Act to claims that allege employment discrimination on the basis of a disability under Section 501. See Woodruff v. Peters, 482 F.3d at 527; Taylor v. Rice, 451 F.3d at 905. The ADA, in turn, requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(a).[5]

The District of Columbia Circuit has held that in an ADA or Rehabilitation Act case it is appropriate to apply the traditional McDonnell-Douglas framework, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to claims that an employer acted with discriminatory intent, but it is *not* appropriate to do so when the claim is that the employer failed to provide a reasonable accommodation, as it is here. See Aka v. Washington Hospital Center,

_____

[5]     Defendant does not dispute that Mr. Bonieskie was "otherwise qualified" during the time period relevant to this dispute, and so the Court will not address this issue. See 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" to mean "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires").

8

156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc). Such a claim "has its own specialized standards." Id. Furthermore, when "the employer maintains that the employee is not an . . . individual with a disability," and/or asserts non-discriminatory reasons for its adverse employment action, courts are to evaluate the parties' arguments "[a]pplying traditional burden of proof standards." Flemmings v. Howard Univ., 198 F.3d 857, 860-61 (D.C. Cir. 1999) (interpreting Barth v. Gelb, 2 F.3d at 1186). In such cases, the employee has the burden of proof by a preponderance of the evidence. Id. at 861; see also Stewart v. St. Elizabeth's Hosp., Civil Action No. 04-1444, 2007 WL 2257220, at *13 n.10 (D.D.C. Aug. 3, 2007); Pantazes v. Jackson, 366 F. Supp. 2d 57, 66 (D.D.C. 2005); Lester v. Natsios, 290 F. Supp. 2d 11, 24 n.4 (D.D.C. 2003). Thus, as described more fully below, the burden is on Mr. Bonieskie, as the non-moving party, to identify a genuine dispute of material fact with respect to those aspects of his claims challenged by defendant.

### B. Prima Facie Case

To establish a prima facie case under the Rehabilitation Act for failure to accommodate, Mr. Bonieskie must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Stewart v. St. Elizabeth's Hosp., 2007 WL 2257220, at *12 (quoting Scarborough v. Natsios, 190 F. Supp. 2d 5, 19 (D.D.C. 2002)); see also Lester v. Natsios, 290 F. Supp. 2d at 23.[6]

---

[6]     As Judge Urbina has observed, it is not clear which formulation of the *prima facie* case prevails in this Circuit: the four-prong test set out above or a very similar three-prong test.

## IV.  DISCUSSION

This case centers on defendant's claim that Mr. Bonieskie has not and cannot come forward with evidence sufficient to establish the first and second elements of his *prima facie* case.  Defendant argues that Mr. Bonieskie (1) was not a disabled individual within the meaning of the Rehabilitation Act during the time period relevant to this dispute, <u>see</u> Def.'s Mot. at 6-10, and (2) never notified the agency of his purported disabilities nor requested an accommodation on the basis of those purported disabilities.  <u>See id</u>. at 2-3, 10-13.  In response, Mr. Bonieskie contends that he was disabled within the meaning of the Rehabilitation Act, <u>see</u> Pl.'s Opp. at 9-12, and that the Marshals Service had sufficient notice of his purported disabilities to trigger its legal duty to accommodate him by not demoting him.  <u>See id</u>. at 12-15. The Court disagrees with Mr. Bonieskie on both counts.

### A.  Disability Requirement

"To sustain a disability claim pursuant to the Rehabilitation Act, . . . a plaintiff must as a threshold matter establish that he or she has a disability."  <u>Lester v. Natsios</u>, 290 F. Supp. 2d at 23-24.  Under the Rehabilitation Act, an "individual with a disability" is an individual who has "a physical or mental impairment which substantially limits one or more of

---

See <u>Jones v. Univ. of Dist. of Columbia</u>, 505 F. Supp. 2d 78, 87-88 & n.6 (D.D.C. 2007) (employing the three-prong test in a discrimination case under the Rehabilitation Act, under which "the plaintiff must show that she (1) is an individual with a disability (2) who, with or without reasonable accommodation, can perform the essential functions of the position, and (3) who suffered an adverse employment decision due to her disability.").  While this Court finds the four-prong test more appropriate for failure-to-accommodate cases such as this one, the distinction is unimportant here; the only real difference between the two formulations – that is, "the notice requirement of the four-prong test" – is "implied in the three-prong test's requirement of an adverse employment decision *due to a disability*."  <u>Id</u>. at 88 n.6 (emphasis added).

such [individual's] major life activities; . . . a record of such an impairment; or . . . is regarded as having such an impairment."  29 U.S.C. § 705(20)(B)(i)-(iii);  <u>see also</u> 42 U.S.C. § 12102(2) (ADA's identical definition of disabled individual).

Mr. Bonieskie makes no claim that he was disabled by virtue of a "record of an impairment" or being "regarded as having . . . an impairment"; rather, he maintains that he qualifies as an "individual with a disability" because his drug dependency and chronic pain in fact substantially limited his ability to engage in certain major life activities.  <u>See</u> Compl. ¶¶ 14, 15. Defendant does not dispute that Mr. Bonieskie suffered from drug dependency and chronic pain, that these conditions were "impairments," or that such impairments could, under some circumstances, constitute disabilities.[7]  Rather, defendant argues that Mr. Bonieskie has failed to offer evidence sufficient to create a genuine factual dispute with respect to whether *his* drug dependency and chronic pain substantially limited *his* ability to participate in any major life activities.  <u>See</u>, <u>e.g.</u>, Def.'s Mot. at 6-10; <u>see also</u> <u>Sutton v. United Air Lines</u>, 527 U.S. 471, 483 (1999) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.").  Thus, to survive summary judgment on the threshold issue of whether he was an "individual with a disability" during the time period relevant to this dispute, Mr. Bonieskie must provide evidence – through affidavits, declarations, deposition testimony or otherwise – sufficient for a reasonable jury to conclude that his drug dependency

---

[7]     The Court therefore will assume that plaintiff's conditions could constitute disabilities provided they substantially limited one or more major life activities.

and chronic pain "substantially limited" his ability to engage in one or more "major life activities."

The applicable EEOC regulations define the term "substantially limited" to mean "(i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1). "Major life activities" are "those activities that are of central importance to daily life," Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Factors that should be considered in determining whether an individual is substantially limited in a major life activity include "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). The Supreme Court has emphasized that the terms "substantially limited" and "major life activity" must be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. at 196-97.

> [T]o be substantially limited . . . , an individual must have an impairment that *prevents* or *severely restricts* the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be *permanent* or *long term*.

<u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. at 198 (citing 29 C.F.R.

§§ 1630.2(j)(2)) (emphasis added).[8]

Mr. Bonieskie claims that, at all times relevant to this dispute, his drug

dependency and chronic pain substantially limited his ability to engage in the major life activities

of sleeping, thinking, working, caring for himself, and interacting with others.  <u>See</u> Pl.'s Opp.

at 9-10.  The Court addresses each of the major life activities that Mr. Bonieskie claims were

"severely restricted" by his drug dependency and chronic pain below.

### 1.  Sleeping

Mr. Bonieskie argues that he was disabled because his impairments substantially

limited his ability to sleep.  His evidence in support of this argument is limited to a few isolated

statements in his own deposition.  <u>See</u> Pl.'s Opp. at 10 (citing Bonieskie Dep. at 65-74).  In short,

Mr. Bonieskie states that, during the time he abused Percocet and Ambien, he would occasionally

sleepwalk around the house, and, in at least one instance, he yelled at his wife and children while

still in a semi-sleep state.  <u>See</u> Bonieskie Dep. at 66.[9]  Even assuming that these claims are true,

this argument cannot survive summary judgment for three distinct but related reasons.

---

[8]      The <u>Toyota</u> case, of course, interpreted the terms "substantially limited" and "major life activity" in the context of an ADA claim.  But because the Rehabilitation Act and the ADA are so similar, "'cases interpreting either are applicable and interchangeable'" – at least for definitional purposes such as these.  <u>Scarborough v. Natsios</u>, 190 F. Supp. 2d at 19 n.10 (quoting <u>Gorman v. Bartch</u>, 152 F.3d 907, 912 (8th Cir. 1998)).

[9]      Mr. Bonieskie has also claimed that he cooked meals (and left the stove on) while sleepwalking, <u>see</u> Compl. ¶ 26, but those events are not discussed in the portions of the deposition referred to by the parties.

First, Mr. Bonieskie's statements are simply too vague and conclusory for a reasonable jury to conclude that the events he experienced *substantially limited* his ability to sleep.  See Rossbach v. City of Miami, 371 F.3d 1354, 1359 (11th Cir. 2004); Pouliot v. Town of Fairfield, 226 F. Supp. 2d 233, 244 (D. Me. 2002) ("As [plaintiff] has neither described his inability to sleep beyond generalities . . . he has not provided evidence to support a reasonable conclusion that he was significantly restricted in his ability to sleep.").  Second, Mr. Bonieskie has failed to provide any evidence – or even allege, for that matter – that the events he describes caused the quality of his sleep to be significantly worse than that of an average person in the general population.  Such evidence is typically necessary to survive summary judgment on such claims because "difficulty sleeping is extremely widespread."  Thompson v. Rice, 422 F. Supp. 2d 158, 172 (D.D.C. 2006); see also EEOC v. Sara Lee Corp., 237 F.3d 349, 352 (4th Cir. 2001) (affirming summary judgment for defendant where plaintiff's epilepsy occasionally prevented her from sleeping through the night but there was no evidence that her ability to sleep was significantly worse than the average person); Bell v. Gonzales, 398 F. Supp. 2d 78, 91 (D.D.C. 2005) (granting summary judgment where plaintiff "made no showing that his sleep disturbances are any worse than that suffered by many in the general population").

Third, it appears that Mr. Bonieskie's sleep problems were intermittent and short-term in nature.  See Bonieskie Dep. at 66 (stating that the sleepwalking incidents occurred "not very often" and perhaps "a couple of times" during the spring and summer of 2004).  At any rate, Mr. Bonieskie has offered no evidence that his impairments frequently or consistently limited his ability to sleep.  As noted above, an impairment is not substantially limiting unless its impacts are *"*permanent or long term" in nature.  Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534

14

U.S. at 198.  Thus, the events described by Mr. Bonieskie do not rise to the level of a "substantial

limitation" on his ability to sleep.  See Bell v. Gonzales, 398 F. Supp. 2d at 91 (granting

summary judgment where evidence in the record established that plaintiff's "sleep interruptions

appear to be variable, not permanent, and subject to extended periods of abatement").

### 2.   Working

Mr. Bonieskie also argues that he was disabled because his impairments

substantially limited his ability to work.[10]  Here, too, he relies exclusively on his own deposition

testimony to support his argument.  Mr. Bonieskie states that, in or about summer 2004, he was

"going in [to work] very tired, putting my head down on the desk, hav[ing] a hard time

concentrating, forgetting things, [and] leaving things where I shouldn't have."  Bonieskie Dep.

at 72.[11]  He also states that his productivity "had gone down quite a bit" and that his appearance

declined but that his supervisors did not notice the change.  See id. at 73.

Even assuming that these claims are true, this argument cannot survive summary

judgment.  An individual is substantially limited in the major life activity of working if he or she

is

---

[10]    Again, because the parties assume that working constitutes a major life activity, the Court does not address the issue.  It should be noted, however, that the Supreme Court has questioned whether working qualifies as a major life activity.  See Sutton v. United Airlines, Inc., 527 U.S. at  492; see also Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001), cert. denied, 534 U.S. 818 (2001); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 143 n.7 (D.D.C. 2004).

[11]    Mr. Bonieskie also has claimed that he suffered occasional "memory lapses and blackouts" while at work, see Compl. ¶ 21, but those events are referenced only indirectly in the portions of the deposition relied on by the parties.  See Bonieskie Dep. at 80 (appearing to refer to memory lapses), 90 (appearing to refer to blackouts).

> significantly restricted in the ability to perform either a class of
> jobs or a broad range of jobs in various classes as compared to the
> average person having comparable training, skills and abilities.
> *The inability to perform a single, particular job does not constitute*
> *a substantial limitation in the major life activity of working.*

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added).

Mr. Bonieskie has offered not even a scintilla of evidence that his impairments

significantly restricted his ability to perform a class or broad range of jobs.[12]   At most, he has

offered evidence that his impairments affected his ability to do *the job he held* – but the "inability

to perform a single, particular job does not constitute a substantial limitation in the major life

activity of working."   29 C.F.R. § 1630.2(j)(3)(i).   In any event, the record, viewed as a whole,

suggests that Mr. Bonieskie was not even substantially limited in his ability to do his job.  See,

e.g., Bonieskie Dep. at 53 (testifying that from 2002 to 2004 he took – and passed – work-related

physical fitness tests, and never asked for any waiver of such requirements); id. at 54 (testifying

that he never asked to be excused from firearm training).   Indeed, Mr. Bonieskie acknowledges

that he "was able to perform his job duties on a regular basis" after he was placed on light duty in

2001.  Plaintiff's Response to Defendant's Statement of Material Facts As To Which There Is No

Genuine Dispute ¶ 5.  Thus, the record establishes that Mr. Bonieskie was not substantially

limited in his ability to perform the job he held, let alone "a class of jobs or a broad range of jobs

in various classes."  Cf. Stewart v. St. Elizabeth's Hosp., 2007 WL 2257220, at *15-16

(plaintiff's request "to be assigned to work elsewhere [within the same agency] undercuts any

---

[12]      In his opposition to defendant's motion, Mr. Bonieskie asserts that his memory
loss and blackouts "*would* [potentially] substantially limit [his] ability to perform a wide range of
other jobs."  Pl.'s Opp. at 12 (citing Pl.'s Compl. ¶ 21).  As the Court has already noted,
however, "conclusory allegations" and "unsubstantiated speculation" do not create genuine
issues of material fact.  Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d at 428.

suggestion that she may have been substantially limited in the major life activity of working");

Thompson v. Rice, 422 F. Supp. 2d at 171-72 (plaintiff's claim fails because she has not shown

she is excluded from substantial class or broad range of jobs); Mitchell v. Yates, 402 F. Supp. 2d

222, 229 (D.D.C. 2005) (because plaintiff, a police officer, "concede[d] that he [was] capable of

performing as a police officer with administrative duties [such as] the duties in his present

position," he could not state an ADA claim based on the theory that he was substantially limited

in the major life activity of working).  The Court therefore concludes that there is no genuine

factual dispute with respect to whether Mr. Bonieskie was substantially limited in his ability to

work.

### 3.  Other Major Life Activities

Mr. Bonieskie also argues that he was disabled because his impairments

substantially limited his ability to think, care for himself, and interact with others.  As Mr.

Bonieskie has failed to provide evidence sufficient for a reasonable juror to find that he was

substantially limited in these activities, this argument fails as well.

For example, Mr. Bonieskie has offered evidence of only one specific instance in

which his impairments affected his ability to think.  See Bonieskie Dep. at 73 (testifying that he

left work files in the wrong place).  Occasional, minor forgetfulness does not qualify as a

substantial limitation on one's ability to think.  See EEOC v. Sara Lee Corp., 237 F.3d at 353

(forgetting things "two or three times a week" does not rise to the level of a substantial limitation

on ability to think).

Mr. Bonieskie also asserts that he was substantially limited in his ability to care for himself because he was "only taking one or two showers a week" when he would usually shower daily.  See Bonieskie Dep. 72; see also Pl.'s Opp at 11 (arguing that Mr. Bonieskie was substantially limited in the major life activity of "caring for his personal hygiene").  Again, this is not enough to create a genuine factual dispute with respect to whether Mr. Bonieskie was substantially limited in his ability to care for himself.  First, Mr. Bonieskie offers no evidence tending to show that this negative effect on his bathing regimen was "permanent or long term." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. at 198 (citing 29 C.F.R. §§ 1630.2(j)(2)).  Second, while the Court readily acknowledges that bathing is an important part of the major life activity of caring for oneself, see Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1134 (9th Cir. 2001), it does not follow that *any* effect on one's bathing regimen constitutes a "substantial limitation" on one's ability to care for oneself.  The Court is not persuaded that an impairment that causes an individual to bathe once or twice a week "significantly restricts" that individual's ability to bathe – let alone that individual's ability to take care of oneself in a broader sense.  Indeed, many people, for many reasons, choose not to bathe on a daily basis – and some (busy parents come to mind) simply do not have time to do so.  Cf. Thompson v. Rice, 422 F. Supp. 2d at 174 (an individual who needs help waking up is not substantially limited in her ability to care for herself because "many people require assistance on a regular basis to wake up (*e.g.*, an alarm clock)").  This claim therefore cannot survive summary judgment.

Finally, Mr. Bonieskie argues that he was substantially limited in his ability to interact with others because his purported disabilities caused "painful difficulties in his relations with his wife and children."  See Pl.'s Opp. at 11.  His testimony on this score appears to refer to

a few isolated incidents – such as when Mr. Bonieskie yelled at his wife and children and when

Mr. Bonieskie was asked to leave the family home due to his drug abuse.  While these events

were no doubt unpleasant for Mr. Bonieskie, they do not indicate that he was substantially

limited in his ability to interact with others.  Again, Mr. Bonieskie has failed to offer evidence

that his ability to interact with others was affected permanently or over a long period of time.  As

Judge Bates put it:

> [A] plaintiff is "substantially limited" in "interacting with others"
> when the mental or physical impairment severely limits the
> *fundamental ability to communicate* with others.  This standard is
> satisfied when the impairment severely limits the plaintiff's ability
> to connect with others, *i.e.*, *to initiate contact with other people
> and respond to them, or to go among other people – at the most
> basic level of these activities.*  The standard is not satisfied by a
> plaintiff whose basic ability to communicate with others is not
> substantially limited but whose communication is inappropriate,
> ineffective, or unsuccessful.

Bell v. Gonzales, 398 F. Supp. 2d at 88 (emphasis added) (quoting Jacques v. DiMarzio, Inc.,

386 F.3d 192, 203 (2d Cir. 2004)).  In other words, an impairment does not constitute a

substantial limitation on one's ability to interact merely because it tends to reduce the subjective

quality of one's interactions.  Id.  This claim therefore cannot survive summary judgment.

   Because there is no genuine factual dispute about whether plaintiff is disabled,

plaintiff cannot establish a *prima facie* case of discrimination under the Rehabilitation Act.  The

Court must therefore grant summary judgment in favor of defendant.

### B.  Notice Requirement

   Although it is not necessary in order to resolve this case, the Court briefly

addresses an alternative ground for granting summary judgment in favor of defendant:  Mr.

19

Bonieskie's failure to advise defendant of his need for the accommodation that he claims he was unlawfully denied.

An employer is under no duty to provide a reasonable accommodation if it is not aware of an individual's disability.  See Hedberg v. Indiana Bell Telephone Co., 47 F.3d 928, 934 (7th Cir. 1995) ("The ADA does not require clairvoyance" on the part of employers); Goodman v. Potter, 412 F. Supp. 2d at 16-17; Scarborough v. Natsios, 190 F. Supp. 2d at 19. After all, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested" – or at least made known his need for – "an accommodation which the defendant-employer has denied." Flemmings v. Howard Univ., 198 F.3d at 861.

Mr. Bonieskie admits that he never told the Marshals Service about his purported disabilities and that he never explicitly requested an accommodation.  See Bonieskie Dep. at 55, 65-66, 74-76, 90, 99, 173; see also Pl.'s Opp. at 13.  Still, he claims that the agency should have known that he was disabled and in need of a reasonable accommodation because (1) his supervisors were allegedly aware of his "problems at work and discussed them among themselves," Pl.'s Opp. at 12; (2) he sought counseling from the EAP program, thereby putting the agency on notice that he was disabled and in need of an accommodation, see id. at 13; and (3) he described his struggles with drug dependency in the memorandum he submitted to the agency in response to the agency's proposal to remove him.  See id. at 14-15.  None of these arguments have any merit.

First, even if Mr. Bonieskie's supervisors were aware of and troubled by his "problems at work," it does not follow that they were aware of his disability and his need for an accommodation.  After all, many people have "problems at work," and relatively few of those

problems are related to disabilities.  Cf. Crandall v. Paralyzed Veterans of America, 146 F.3d

894, 898 (D.C. Cir. 1998) ("A layman cannot reasonably be expected to infer a psychiatric

disorder merely from rudeness, given the prevalence of rudeness without psychiatric disorder.").

Mr. Bonieskie offers absolutely no evidence for the proposition that "his supervisors were in fact

aware of his disability," Pl.'s Opp. at 13, and "unsubstantiated speculation" does not create

genuine issues of material fact.  Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d at 428.

      Second, no reasonable juror could conclude that Mr. Bonieskie's contacts with the

EAP put the agency on notice of his disabilities.  Mr. Bonieskie has stated that, when he sought

counseling from the EAP, he was aware that his communications would, pursuant to the

program's policies, remain confidential.  See Bonieskie Dep. at 9.  In other words, Mr. Bonieskie

concedes that there was no reason to believe that his communications would be passed along to

his supervisors or anyone else in the agency – nor does he provide any evidence suggesting that

the EAP *did* disclose his communications.  Mr. Bonieskie's theory is that

> while such communications generally are deemed confidential,
> there is an explicit exception for situations where an employee
> poses a "danger to himself/herself, or to others" . . . .  Clearly, a
> sworn law enforcement officer, carrying a firearm in the course of
> his duties, poses a significant threat to himself and others when,
> like Deputy Bonieskie, he is suffering from a chemical drug
> dependency, and is experiencing memory lapses and blackouts at
> work.  Thus, a reasonable person could readily conclude that EAP
> personnel promptly forwarded the information about Deputy
> Bonieskie to Agency management officials.

Pl.'s Opp. at 13 (quoting Pl.'s Opp., Ex. C, Online Brochure, U.S. Department of Justice

Employee Assistance Program at 3 (Aug. 1, 2007)).  The main problem with this theory is that

Mr. Bonieskie offers no evidence for the proposition that his communications with the EAP

would have indicated that he was dangerous; indeed, Mr. Bonieskie apparently assured the EAP

personnel with whom he spoke that he planned to cease taking prescription drugs.  See Compl.

¶ 23.  In any event, the Court rejects this theory as utterly speculative.  See Fujitsu Ltd. v. Fed.

Express Corp., 247 F.3d at 428; Harding v. Gray, 9 F.3d at 154.[13]

       Finally, Mr. Bonieskie's written response to the agency's proposal to remove him

does not constitute notice to the agency of his purported disabilities and his need for an

accommodation.  In that response, Mr. Bonieskie's counsel represented that (1) Mr. Bonieskie's

accident had occurred as a result of his "disability involving drug dependency," Response Mem.

at 1; (2) Mr. Bonieskie entered a drug treatment program immediately after the accident, and was

now "fully rehabilitated from his dependency," id.; and (3) removing Mr. Bonieskie from federal

employment was too harsh a sanction under the circumstances and would not serve the interests

of the agency.  See id. at 12.  The Response Memorandum did not request an accommodation of

any sort, although it did ask the agency to consider a less harsh sanction "because [Mr.

Bonieskie] was suffering from the effects of a disability based on a drug dependency [at the time

of the accident] which he has now overcome through structured treatment."  Response Mem.

at 7.  Thus, this theory of notification fails for two reasons.  First, to whatever extent it notified

---

       [13]      Notably, Mr. Bonieskie has stated that he "intends to seek discovery relating to
[whether agency officials were aware of Mr. Bonieskie's disability by virtue of his 'problems
at work' and his communications with EAP], and clearly should be permitted to do so."  Pl.'s
Opp at 12.  To the extent that this statement represents a request for discovery under Rule 56(f)
of the Federal Rules of Civil Procedure, the Court denies the request for two reasons.  First,
plaintiff has never asked the Court to deny defendant's motion or to hold it in abeyance pending
discovery under Rule 56(f), nor has plaintiff submitted affidavits setting forth with any
particularity the reasons discovery is necessary.  See FED. R. CIV. P. 56(f).  Second, as noted
above, the theories for which plaintiff intends to seek discovery are entirely unsubstantiated and
speculative.

the agency of Mr. Bonieskie's purported disabilities and need for an accommodation, the Response Memorandum also assured the agency that the purported disability no longer existed and thus was no longer in need of an accommodation.  Second, even assuming one could regard the Response Memorandum or any part thereof as a request for an accommodation, one would have to conclude that the accommodation sought was a lesser sanction.  <u>See</u>, <u>e.g.</u>, Response Mem. at 7, 15.  But of course, the agency *did* grant a lesser sanction – Mr. Bonieskie was demoted rather than terminated.  Thus, even assuming Mr. Bonieskie was disabled, and even assuming he requested an accommodation, the Marshals Service granted the accommodation he requested.  It therefore is not liable under the Rehabilitation Act.

## V.   CONCLUSION

For the reasons set forth in this Opinion, the Court concludes that (1) Mr. Bonieskie was not disabled within the meaning of the Rehabilitation Act during the time period relevant to this dispute, and (2) he failed to notify the United States Marshals Service of his purported disabilities and need for an accommodation.  The Court therefore grants summary judgment in favor of defendant.

An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge


DATE:  March 31, 2008